**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

―――――――――――――――――――――――――――――――――

**TARA SWEET, CORRINE ARMISON, and**
**BROOKLYNN CLINE,**

                    **Plaintiffs,**                **VERIFIED ANSWER**
                                          **TO COMPLAINT**

    **-against-**

                                     **Civil Action No.: 6:24-cv-6118**

**BATAVIA DOWNS CASINO, WESTERN**
**REGIONAL OFF TRACK BETTING CORP.,**
**SCOTT KIEDROWSKI, Chief Operating Officer**
**and DANIEL WOOD, Director of Security,**

                    **Defendants.**

―――――――――――――――――――――――――――――――――

        Defendants BATAVIA DOWNS CASINO and WESTERN REGIONAL OFF TRACK

BETTING CORP. (collectively hereinafter referred to as "Defendants"), by their counsel,

Schröder, Joseph & Associates, LLP, for their Answer to the Plaintiff's Complaint states as

follows:

        **The following numbered paragraphs correspond to the numbered paragraphs of the**

**Complaint:**

        1.       This is an action to enforce New York State and Federal labor laws. Plaintiffs

Tara Sweet, Corinne Armison, and Brooklynn Cline (collectively "Plaintiffs") worked at Batavia

Downs Casino, Western Regional Off Track Betting Corp. (hereinafter "OTB" or "Employer")

as bartenders. During their tenures at OTB and until November 2023, the Employer maintained a

practice of pooling tips and giving a cut of the pooled tips to supervisors. After Plaintiff Sweet

brought this unlawful practice to the Employer's attention, the Employer retaliated against Sweet

by cutting her hours, giving her less preferential shifts, verbally harassing her, disciplining her

without just cause, and ultimately terminating Sweet's employment. Following her suspension,

Sweet disclosed that she had been subjected to sexual harassment by the Chief Operating Officer

and the Director of Security. The Employer has taken no action to correct any of these issues and

must be held responsible for such heinous conduct.

**RESPONSE: The allegations contained in paragraph 1 of the Complaint are conclusions of**

**law as opposed to well-pled facts and, accordingly, no responsive pleading is required. To**

**the extent that a responsive pleading is required, Defendants deny that they engaged in**

**unlawful practices in violation of the Fair Labor Standards Act ("FLSA"); deny that**

**Plaintiffs were retaliated against; deny that Plaintiff Tara Sweet was subjected to sexual**

**harassment or disciplined or terminated without just cause; and further deny that**

**Defendants have engaged in any unlawful conduct whatsoever.**

2.    This Court has proper jurisdiction because the conduct giving rise to the cause of

action alleged in this Complaint occurred in Genesee County.

**RESPONSE:  Responding to paragraph 2 of the Complaint, Defendants admit that the**

**events at issue in this action occurred in Genesee County and further admit that the**

**United States District Court for the Western District of New York has proper jurisdiction**

**of this action.**

3.    This Court is the proper venue under New York Civil Practice Law and Rules

section 503(a), because Plaintiffs reside or worked in Genesee County.

**RESPONSE:  Responding to paragraph 3 of the Complaint, Defendants admit that the**

**Plaintiffs resided or worked in Genesee County and further admit that the United States**

**District Court for the Western District of New York has proper jurisdiction of this action.**

2

4.    Plaintiff TARA SWEET is an adult resident of Elba, New York, located in Genesee County. Sweet was employed by the Employer from on or around September 9, 2019 until on or around November 9, 2023, when she was terminated.

**RESPONSE:  Responding to paragraph 4 of the Complaint, Defendants admit that Plaintiff Tara Sweet was employed by Western Regional Off Track Betting Corp. (hereinafter referred to as "WROTB") from on or around September 9, 2019 until on or around November 9, 2023 when she was terminated for engaging in theft and deny knowledge or information sufficient to form a belief as to the truth of any remaining allegations of paragraph 4 of the Complaint.**

5.    Plaintiff CORINNE ARMISON is an adult resident of Batavia, New York, located in Genesee County. Armison was employed by the Employer from on or around August 30, 2019 until on or around April 21, 2023, when she resigned.

**RESPONSE:  Responding to paragraph 5 of the Complaint, Defendants admit that Plaintiff Corinne Armison was employed by WROTB from on or around August 30, 2019 until on or around April 21, 2023 when she voluntarily resigned and deny knowledge or information sufficient to form a belief as to the truth of any remaining allegations of paragraph 5 of the Complaint.**

6.    Plaintiff BROOKLYNN CLINE is an adult resident of Belmont, New York, located in Allegany County. Cline was employed by the Employer from in or around October 2022 until on or around May 6, 2023, when she resigned.

**RESPONSE:  Responding to paragraph 6 of the Complaint, Defendants deny that Plaintiff  Brooklynn Cline was employed by WROTB from on or around October, 2022 and instead admit that Ms. Cline was employed from on or around October, 2021 until on**

3

**or around May 6, 2023 when she voluntarily resigned and denies knowledge or information sufficient to form a belief as to the truth of any remaining allegations of paragraph 6 of the Complaint.**

7.      Defendant BATAVIA DOWNS CASINO, WESTERN REGIONAL OFF TRACK BETTING CORP. is a public benefit corporation organized under the laws of the State of New York with its principal place of business in Genesee County, located at 8315 Park Road, Batavia, NY 14020.

**RESPONSE:  Defendants admit the allegations of paragraph 7 of the Complaint.**

8.      Defendant SCOTT KIEDROWSKI works in Genesee County. Upon information and belief, Kiedrowski is the Chief Operating Officer for the Employer.

**RESPONSE:  Defendants admit the allegations of paragraph 8 of the Complaint.**

9.      Defendant DANIEL WOOD works in Genesee County. Upon information and belief, Wood is the Director of Security for the Employer.

**RESPONSE:  Defendants admit the allegations of paragraph 9 of the Complaint.**

10.     At all relevant times, Plaintiffs were employees within the meaning of NY Executive Law §§292 et seq., Federal Labor Law Title 29, Chapter 8, §§203 et seq., and supporting New York State and United States Department of Labor regulations.

**RESPONSE: The allegations contained in paragraph 10 of the Complaint are conclusions of law as opposed to well-pled facts and accordingly, no responsive pleading is required. To the extent that a responsive pleading is required, Defendants deny that they engaged in unlawful practices in violation of the FLSA; deny that Plaintiffs were retaliated against; deny that Plaintiff Tara Sweet was subjected to sexual harassment or disciplined or terminated without just cause; and further deny that Defendants have engaged in any**

4

**unlawful conduct whatsoever.**

11.    At all relevant times, Defendants have been an employer within the meaning of NY Executive Law §§292 et seq., Federal Labor Law Title 29, Chapter 8, §§203 et seq., and supporting New York State and United States Department of Labor regulations.

**RESPONSE: The allegations contained in paragraph 11 of the Complaint are conclusions of law as opposed to well-pled facts and accordingly, no responsive pleading is required. To the extent that a responsive pleading is required, Defendants deny that they engaged in unlawful practices in violation of the FLSA; deny that Plaintiffs were retaliated against; deny that Plaintiff Tara Sweet was subjected to sexual harassment or disciplined or terminated without just cause; and further deny that Defendants have engaged in any unlawful conduct whatsoever.**

12.    At all relevant times, Defendants Scott Kiedrowski and Daniel Wood have been company agents or officers within the meaning of NY Executive Law §§292 et seq. and supporting New York State Department of Labor regulations.

**RESPONSE: The allegations contained in paragraph 12 of the Complaint are conclusions of law as opposed to well-pled facts and accordingly, no responsive pleading is required. To the extent that a responsive pleading is required, Defendants deny that they engaged in unlawful practices in violation of the FLSA; deny that Plaintiffs were retaliated against; deny that Plaintiff Tara Sweet was subjected to sexual harassment or disciplined or terminated without just cause; and further deny that Defendants have engaged in any unlawful conduct whatsoever.**

13.    The OTB's bartenders are responsible for performing typical bartender duties at one of two bars as well as working events held at the Employer's facility.

**RESPONSE:  Defendants admit the allegations of paragraph 13 of the Complaint except to state that there are three bars—not two bars—at the facility.**

14.     From before 2017 until on or about November 1, 2023, the OTB maintained a policy where all tips earned during a shift or event were pooled and split evenly amongst all staff who worked during the shift including supervisors.

**RESPONSE:  Responding to paragraph 14 of the Complaint, Defendants admit that from before 2017 until on or about November 1, 2023, Defendants' employees who were responsible for performing typical bartender duties at any one of the three bars at the WROTB facility in Batavia, New York, engaged in a tip pooling arrangement whereby all tips earned during a shift or event were pooled and split evenly amongst all the staff who worked during the shift, but Defendants DENY that the persons referred to in paragraph 14 of the Complaint as "supervisors" are in fact "supervisors" within the meaning of the FLSA because documentary evidence consisting of a true and correct copy of the description of these persons' job duties, attached hereto as __EXHIBIT A__,[1] and true and correct documentary evidence consisting of recordings of the amount of time expended by these persons on bartending duties as opposed to supervisory duties by these persons, attached hereto as __EXHIBIT B__,[2] clearly establish that the persons referred to as "supervisors" in paragraph 14 of the Complaint are NOT supervisors within the meaning of the FLSA.**

15.     On November 1, 2023, following a labor management meeting between the OTB

---

[1] __EXHIBIT A__ consists of  the job descriptions of all supervisors who also engaged in bartending duties at the two bars referenced in paragraph 13 of the Complaint during the period from November 1, 2020 to November 1, 2023.

[2] __EXHIBIT B__ consists of recordings of the amount of time expended by the persons whose job descriptions are set forth in Exhibit A on bartending duties as opposed to supervisory duties during the period from November 1, 2020 to November 1, 2023.

and UPSEU, the union that represents the bartenders who work for the Employer, the Employer

agreed to stop the practice of giving a percentage of the tips to on duty supervisors.

**RESPONSE: Responding to paragraph 15 of the Complaint, Defendants state that the
Union representing the Plaintiff's in this action filed a grievance alleging that Kara Long
and Katie Wishman—whose job title was "on duty supervisor"—were "performing
bargaining unit work." A copy of the Union's Grievance is attached hereto as EXHIBIT
A. Defendants asserted in response to that grievance that WROTB had a long-standing
past practice of these employees performing bargaining unit work. In further response to
paragraph 15 of the Complaint, WROTB admits that on November 1, 2023, following a
labor management meeting between WROTB and UPSEU, the Union that represents
bartenders who work for WROTB, agreed that the persons referred to in paragraph 15 of
the Complaint as "on duty supervisors" would no longer perform bargaining unit work
and thus, would no longer be eligible to participate in the tip pool. In further response to
paragraph 15 of the Complaint—and consistent with the Union's grievance (a true and
correct copy of which is attached hereto as Exhibit A) which admits that the individuals
referred to paragraph 15 of the Complaint were "on duty supervisors" who were
performing bargaining unit work—Defendants DENY that the persons referred to in
paragraph 15 of the Complaint as "on duty supervisors" are in fact "on duty supervisors"
within the meaning of the FLSA because documentary evidence consisting of a true and
correct copy of the description of these persons' job duties, attached hereto as EXHIBIT
B, and true and correct copies of documentary evidence consisting of recordings of the
amount of time expended by these persons on bartending duties as opposed to supervisory
duties by these persons, attached hereto as EXHIBIT C, clearly establish that the persons**

**referred to as "on duty supervisors" in paragraph 15 of the Complaint are NOT**

**supervisors within the meaning of the FLSA.**

16.    No resolution was reached with UPSEU or the Plaintiffs over the tips owed to

the OTB bartenders. Upon information and belief, the OTB did not compensate any of the

bartenders for the tips unlawfully given to supervisors during the long tenure of its tip policy.

**RESPONSE:  Responding to paragraph 16 of the Complaint, Defendants admit that—**

**consistent with the Union's grievance (a true and correct copy of which is attached**

**hereto as Exhibit A), which expressly states that the "on duty supervisors" were**

**performing bargaining unit work—the resolution of the dispute with UPSEU did not**

**include any agreement to pay Plaintiffs or other bartenders compensation and further**

**aver that this was because NO compensation was due and owing to any of the bartenders**

**for the tips shared in by persons referred to in paragraph 16 of the Complaint as**

**"supervisors" because—as shown by documentary evidence consisting of: (a) a true and**

**correct copy of the Union's grievance admitting that the on duty supervisors were**

**performing "bargaining unit work;" (b) the description of these persons' job duties, a**

**true and correct copy of which is attached hereto as <u>EXHIBIT B</u>; and (c) true and**

**correct copies of documentary evidence consisting of recordings of the amount of time**

**expended by these persons on bartending duties as opposed to supervisory duties by**

**these persons which are attached hereto as <u>EXHIBIT C</u>—the persons referred to as**

**"supervisors" in paragraph 16 of the Complaint clearly are NOT supervisors within the**

**meaning of the FLSA.**

17.    Since in or about October 2019 Director of Security Dan Wood has subjected

Plaintiff Sweet to sexual harassment.

**RESPONSE: Defendants deny the allegations of paragraph 17 of the Complaint and further aver that WROTB engaged an independent investigator who issued an independent report attached hereto as <u>EXHIBIT D</u>, which concluded that Ms. Sweet's allegations of sexual harassment are without merit.**

18.    Mr. Wood continually made inappropriate gestures and advances towards Plaintiff Sweet. He frequently told Plaintiff Sweet that she is beautiful, she is a handworker, that they should run away together, that they should get married, and that her fiancé did not deserve her.

**RESPONSE: Defendants deny the allegations of paragraph 18 of the Complaint and further aver that WROTB engaged an independent investigator who issued an independent report attached hereto as <u>EXHIBIT D</u>, which concluded that Ms. Sweet's allegations of sexual harassment are without merit.**

19.    Mr. Wood repeatedly approached Plaintiff Sweet and hugged her or rubbed her back without her consent.

**RESPONSE: Defendants deny the allegations of paragraph 19 of the Complaint and aver in response to paragraph 19 that it has been reported that Ms. Sweet asked Mr. Wood in the presence of other employees to rub her back and further aver that WROTB engaged an independent investigator who issued an independent report attached hereto as <u>EXHIBIT D</u>, which concluded that Ms. Sweet's allegations of sexual harassment are without merit.**

20.    Mr. Wood regularly visited Plaintiff Sweet during her shift. Mr. Wood's behavior towards Plaintiff Sweet caused customers to ask if he was her boyfriend.

**RESPONSE: Defendants deny knowledge or information sufficient to form a belief as to**

9

the truth of the allegations of paragraph 20 of the Complaint and aver in response to paragraph 20 that it has been reported that Ms. Sweet asked Mr. Wood in the presence of other employees to rub her back and further aver that WROTB engaged an independent investigator who issued an independent report attached hereto as **EXHIBIT D**, which concluded that Ms. Sweet's allegations of sexual harassment are without merit.

21.     Throughout 2023, Mr. Wood via text invited Plaintiff Sweet to his office so he could give her a back massage. Mr. Wood also texted Plaintiff Sweet that she could take a 15 minute break in his office and nap on his couch.

**RESPONSE: Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 21 of the Complaint and aver in response to paragraph 21 that it has been reported that Ms. Sweet asked Mr. Wood in the presence of other employees to rub her back and further aver that WROTB engaged an independent investigator who issued an independent report attached hereto as EXHIBIT D, which concluded that Ms. Sweet's allegations of sexual harassment are without merit.**

22.     After Plaintiff Sweet was suspended in August 2023, Mr. Wood's sexual harassment ceased.

**RESPONSE: Responding to paragraph 22 of the Complaint, Defendants admit that Plaintiff Sweet was suspended in August, 2023 for having over served a patron in violation of company policies and rules, but deny that Mr. Wood engaged in sexual harassment of Plaintiff Sweet either before or after Ms. Sweet's suspension in August of 2023 and deny any remaining allegations of paragraph 22 of the Complaint and further aver that WROTB engaged an independent investigator who issued an independent report attached hereto as EXHIBIT D, which concluded that Ms. Sweet's allegations of**

**sexual harassment are without merit.**

23.     In or about July 2021, the Union notified the Employer by Sean Schiano that then Assistant Director of Security Mr. Wood had sexually assaulted a security guard when measuring her for her uniform. By email, on or about July 9, 2021, Mr. Schiano confirmed that he had taken the employee's statement and that the matter would be addressed with VP of Administration William White.

**<u>RESPONSE</u>: Responding to paragraph 23 of the Complaint, Defendants admit that Union complained about an alleged sexual assault of a security guard by Mr. Wood and admit that the Union's complaint was investigated by WROTB only to find that the Union's allegations were without merit and deny any remaining allegations of paragraph 23 of the Complaint.**

24.     Upon information and belief, the Employer never concluded its investigation into Mr. Wood's sexual assault of a security guard.

**<u>RESPONSE</u>: Responding to paragraph 24 of the Complaint, Defendants deny that WROTB failed to conclude its investigation into the Union's complaint as to Mr. Wood's alleged assault of a security guard and Defendants further aver that the Union's complaint was investigated by WROTB only to find that the Union's allegations were without merit and Defendants deny any remaining allegations of paragraph 24 of the Complaint.**

25.     Instead, on or about January 1, 2022, the Employer promoted Mr. Wood to Chief of Security.

**<u>RESPONSE</u>: Responding to paragraph 25 of the Complaint, Defendants admit that Mr. Wood was promoted on or about January 1, 2022 to Director of Security—not Chief of**

Security—and further aver that this promotion occurred after the Union's complaint was investigated by WROTB only to find that the Union's allegations are without merit.

26.   Since in or about January 2020, COO Scott Kiedrowski has subjected Plaintiff Sweet to sexual harassment.

**RESPONSE: Defendants deny the allegations of paragraph 26 of the Complaint and further aver that WROTB engaged an independent investigator who issued an independent report attached hereto as EXHIBIT D, which concluded that Ms. Sweet's allegations of sexual harassment are without merit.**

27.   In or about January 2020, Mr. Kiedrowski invited Plaintiff Sweet and two other female co-workers to a Sabres game in a private suite.

**RESPONSE: Responding to paragraph 27 of the Complaint, Defendants admit that female employees, including Plaintiff Sweet, came to the private suite at various times to view Sabres or Buffalo Bills games, but further aver that males also came to the private suite to view such games and it was alleged by Kara Long that Plaintiffs Tara Sweet and Corinne Armison would text Mr. Kiedrowski to ask him if they could come to the suite and Mr. Kiedrowski did not initiate contact with them.  In further response to paragraph 27, Defendants deny that the viewing of such games constituted sexual harassment and further aver that WROTB engaged an independent investigator who issued an independent report attached hereto as EXHIBIT D, which concluded that Ms. Sweet's allegations of sexual harassment are without merit and further deny any remaining allegations of paragraph 27 of the Complaint.**

28.   After that employee outing, Mr. Kiedrowski began regularly approaching Plaintiff Sweet and complimented her about her looks. He also started to refer to Plaintiff

12

Sweet as "special T".

**RESPONSE: Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 28 of the Complaint and further aver that WROTB engaged an independent investigator who issued an independent report attached hereto as EXHIBIT D, which concluded that Ms. Sweet's allegations of sexual harassment are without merit.**

29.     Mr. Kiedrowski would regularly text Plaintiff Sweet late at night, after she had gone home for the night. Mr. Kiedrowski's texts made Plaintiff Sweet feel uncomfortable. Due to the late hour the texts were sent, Plaintiff Sweet usually would not see the texts until the next morning.

**RESPONSE: Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 29 of the Complaint and further aver that WROTB engaged an independent investigator who issued an independent report attached hereto as EXHIBIT D, which concluded that Ms. Sweet's allegations of sexual harassment are without merit.**

30.     On or about December 6, 2021, Mr. Kiedrowski invited Plaintiff Sweet and two other female co-workers to watch a Bills game in a private suite. While this made Plaintiff Sweet feel uncomfortable, she went because she knew she would not be alone with Mr. Kiedrowski and did not want to upset him.

**RESPONSE: Responding to paragraph 30 of the Complaint, Defendants admit that female employees, including Plaintiff Sweet, came to the private at various times to view Sabres or Buffalo Bills games but further aver that males also came to the private suite to view such games and it was alleged by Kara Long that Plaintiffs Tara Sweet and Corinne**

13

**Armison would text Mr. Kiedrowski to ask him if they could come to the suite and Mr. Kiedrowski did not initiate contact with them.  In further response to paragraph 30, Defendants deny that the viewing of such games constituted sexual harassment and further aver that WROTB engaged an independent investigator who issued an independent report attached hereto as <u>EXHIBIT D</u>, which concluded that Ms. Sweet's allegations of sexual harassment are without merit and further deny any remaining allegations of paragraph 30 of the Complaint.**

31.     In or about February 2022, Mr. Kiedrowski asked Plaintiff Sweet to bring lunch to his office and said that he would give her a big tip. Plaintiff Sweet was scared and creeped out by this request. Plaintiff Sweet did not want to be alone with him. Plaintiff Sweet told her co- worker. The co-worker said she was glad that Mr. Kiedrowski did not ask her to bring him lunch as she would feel uncomfortable. Plaintiff Sweet felt uncomfortable with the request but brought Mr. Kiedrowski lunch to his office because she was too scared to tell him no.

**<u>RESPONSE</u>: Responding to paragraph 31 of the Complaint, Defendants admit that female employees, including Plaintiff Sweet, came to Mr. Kiedrowski's office at various times at lunch times, but further aver that males also came to Mr. Kiedrowski 's office at lunch times.  In further response to paragraph 31, Defendants deny that these visits to Mr. Kiedrowski's office constituted sexual harassment and further aver that WROTB engaged an independent investigator who issued an independent report attached hereto as <u>EXHIBIT D</u>, which concluded that Ms. Sweet's allegations of sexual harassment are without merit and further deny any remaining allegations of paragraph 31 of the Complaint.**

32.     On June 1, 2022, Mr. Kiedrowski texted Plaintiff Sweet asking if these "fuckers

talk to Plaintiff Sweet like this every day", referring to pervert customers. Even though Mr. Kiedrowski witnessed and acknowledged the sexual harassment from customers, he took no steps to address the harassment, and then used it as an opportunity to hit on Sweet. This conversation and Mr. Kiedrowski's advances made Plaintiff Sweet uncomfortable.

**RESPONSE: Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 32 of the Complaint and aver in response to paragraph 32 that it is Ms. Sweet who has acted inappropriately in the workplace in that, for example, it has been reported that Ms. Sweet asked Mr. Wood in the presence of other employees to rub her back and further aver that WROTB engaged an independent investigator who issued an independent report attached hereto as EXHIBIT D, which concluded that Ms. Sweet's allegations of sexual harassment are without merit and further deny any remaining allegations of paragraph 32 of the Complaint.**

33.    In or about August 2022, Plaintiff Sweet spoke to Mr. Kiedrowski's boss, CEO Henry Wojtaszek about customer menu suggestions. Soon after that Plaintiff Sweet received a message from her supervisor stating Mr. Kiedrowski had said that if she had any more complaints, Mr. Kiedrowski would switch her to a different department. After that, Mr. Kiedrowski's inappropriate behavior towards Plaintiff Sweet stopped for a while.

**RESPONSE: Responding to paragraph 33 of the Complaint, Defendants admit that Ms. Sweet spoke to CEO Henry Wojtaszek about customer menu suggestions, but deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 33 of the Complaint and further aver in response to paragraph 33 that it is Ms. Sweet who has acted inappropriately in the workplace in that, for example, it has been reported that Ms. Sweet asked Mr. Wood in the presence of other**

15

**employees to rub her back and further aver that WROTB engaged an independent**

**investigator who issued an independent report attached hereto as <u>EXHIBIT D</u>, which**

**concluded that Ms. Sweet's allegations of sexual harassment are without merit and deny**

**any remaining allegations of paragraph 33 of the Complaint.**

34.    Then in or about December 2022, Mr. Kiedrowski sent Plaintiff Sweet a text saying, "hey special T would you please buy my friends a drink?" Plaintiff Sweet complied with his request because she was afraid of Mr. Kiedrowski retaliating against her due to his threat earlier that year.

**<u>RESPONSE</u>: Defendants deny knowledge or information sufficient to form a belief as to**

**the truth of the allegations of paragraph 34 of the Complaint and aver in response to**

**paragraph 34 that it is Ms. Sweet who has acted inappropriately in the workplace in that,**

**for example, it has been reported that Ms. Sweet asked Mr. Wood in the presence of**

**other employees to rub her back and further aver that WROTB engaged an independent**

**investigator who issued an independent report attached hereto as <u>EXHIBIT D</u>, which**

**concluded that Ms. Sweet's allegations of sexual harassment are without merit and**

**further deny any remaining allegations of paragraph 34 of the Complaint.**

35.    Since December 2022, Mr. Kiedrowski has left Plaintiff Sweet alone.

**<u>RESPONSE</u>: Defendants deny knowledge or information sufficient to form a belief as to**

**the truth of the allegations of paragraph 35 of the Complaint, but aver in response to**

**paragraph 35 that Defendants have no knowledge of any inappropriate conduct on the**

**part of Mr. Kiedrowski as to Ms. Sweet or any other employee and it is Ms. Sweet who**

**has acted inappropriately in the workplace in that, for example, it has been reported that**

**Ms. Sweet asked Mr. Wood in the presence of other employees to rub her back and**

16

**further aver that WROTB engaged an independent investigator who issued an independent report attached hereto as <u>EXHIBIT D</u>, which concluded that Ms. Sweet's allegations of sexual harassment are without merit and further deny any remaining allegations of paragraph 35 of the Complaint.**

36.    In or about August 2023, Plaintiff Sweet and a co-worker raised concerns about the OTB's tipping practice with management.

**<u>RESPONSE</u>:  Responding to paragraph 36 of the Complaint, Defendants admit that Plaintiff Sweet and a co-worker may have approached the UPSEU with concerns about the tip pooling practice of the bartenders and further aver that WROTB negotiated a resolution of these concerns under the terms of the Collective Bargaining Agreement with UPSEU by not permitting persons with supervisor's duties to participate in the tip pooling so as to comply with the terms of the Collective Bargaining Agreement, but Defendant further aver, however, that the resolution of the dispute with UPSEU did not include any agreement to pay Plaintiffs or other bartenders compensation because NO compensation was due and owing under the FLSA to any of the bartenders for the tips shared in by persons referred to in this Complaint as "supervisors" because—regardless of the terms of the Collective Bargaining Agreement—such persons do not constitute "supervisors" under the FLSA in that—as shown by documentary evidence consisting of a true and correct copy of the description of these persons' job duties, attached hereto as <u>EXHIBIT B</u>, and true and correct copies of documentary evidence consisting of recordings of the amount of time expended by these persons on bartending duties as opposed to supervisory duties by these persons, attached hereto as <u>EXHIBIT C</u>—the persons whom the Complaint refers to as "supervisors" are NOT supervisors within the**

meaning of the FLSA and were entitled under the FLSA to retain their share of the tip money as part of their wages.

37.    In or about August 2023, the OTB retaliated against Plaintiff Sweet and her co-worker by changing their schedules and giving them less preferential work.

**RESPONSE:  Defendants deny the allegations of paragraph 37 of the Complaint and further aver that Plaintiff Tara Sweet's schedule did not change and she was not given "less preferential work."**

38.    In or about August 2023, Plaintiff Sweet contacted UPSEU and asked UPSEU to intervene on their behalf.

**RESPONSE:  Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 38 of the Complaint.**

39.    On or about August 30, 2023, when the OTB learned of UPSEU's involvement, the OTB retaliated against Plaintiff Sweet and her co-worker by suspending each of them for three days without just cause.

**RESPONSE:  Defendants deny the allegations of paragraph 39 of the Complaint and aver that Plaintiff Sweet and her co-worker were suspended for just cause due to Plaintiff Sweet and her co-worker's over serving a patron, which resulted in an altercation in WROTB's facility and which was a direct violation of WROTB's policies and rules of which Plaintiff Sweet and her co-worker were well aware.**

40.    Another bartender was involved in the incident that served as the OTB's justification for suspending Plaintiff Sweet and her co-worker. Upon information and belief, the other bartender was not disciplined.

**RESPONSE:  Responding to paragraph 40 of the Complaint, Defendants admit that**

18

**another bartender who was serving patrons on the evening that Plaintiff and her co-worker overserved a patron was not disciplined and further aver that this was because videotapes routinely recorded in the workplace by WROTB showed that this bartender had not been involved in the over serving of the patron while the videotapes showed that both Plaintiff Sweet and her co-worker who were disciplined were responsible for overserving this patron and Defendants further deny any remaining allegations of paragraph 40 of the Complaint. |**

41.     On October 31, 2023, UPSEU met with the OTB to again discuss the unfair tipping practices and the retaliation against Plaintiff Sweet and her co-worker.

**RESPONSE:  Responding to paragraph 41 of the Complaint, Defendants admit that UPSEU and WRTOB met on October 31, 2023 to discuss the concerns under the Collective Bargaining Agreement as to the sharing of tips with bartenders who were supervisors withing the meaning of the Collective Bargaining Agreement, but deny that there were any discussions of "retaliation" with UPSEU and further aver that Plaintiff Sweet and her co-worker were not retaliated against by Defendants, but instead were suspended for just cause due to Plaintiff Sweet and her co-worker's over serving a patron, which resulted in an altercation in WROTB's facility and which was a direct violation of WROTB's policies and rules of which Plaintiff Sweet and her co-worker were well aware and, further, Defendants deny any remaining allegations of paragraph 41 of the Complaint.**

42.     On or about November 1, 2023, the OTB agreed to stop the practice of giving supervisors a cut of the pooled tips.

**RESPONSE:  Responding to paragraph 42 of the Complaint, Defendants admit that**

**WROTB agreed with UPSEU, on or about November 1, 2023, that under the terms of Collective Bargaining Agreement supervisors should not participate in the pool tips and Defendants further aver that WROTB has adhered to the resolution of the dispute with UPSEU by not permitting persons with supervisor's duties to participate in the tip pooling so as to comply with the terms of the Collective Bargaining Agreement and further aver, however, that the resolution of the dispute with UPSEU did not include any agreement to pay Plaintiffs or other bartenders compensation because NO compensation was due and owing under the FLSA to any of the bartenders for the tips shared in by persons referred to in this Complaint as "supervisors" because—regardless of the terms of the Collective Bargaining Agreement—such persons do not constitute "supervisors" under the FLSA in that—as shown by documentary evidence consisting of a true and correct copy of the description of these persons' job duties, attached hereto as <u>EXHIBIT B</u>, and true and correct copies of documentary evidence consisting of recordings of the amount of time expended by these persons on bartending duties as opposed to supervisory duties by these persons, attached hereto as <u>EXHIBIT C</u>—the persons whom the Complaint refers to as "supervisors" are NOT supervisors within the meaning of the FLSA and were entitled under the FLSA to retain their share of the tip money as part of their wages. In further response to paragraph 42, Defendants deny any remaining allegations of paragraph of paragraph 42 of the Complaint.**

43.     In November 2023, supervisors began to harass Plaintiff Sweet and her co-worker creating a hostile work environment.

**<u>RESPONSE</u>:  Defendants deny the allegations of paragraph 43 of the Complaint.**

44.     UPSEU demanded a meeting with the OTB to address the hostile work

environment.

**RESPONSE:  Responding to paragraph 44 of the Complaint, Defendants aver that, upon information and belief, Plaintiffs are referring to a "meeting" that occurred on November 16, 2023, which constituted the first meeting that day, but deny that the first meeting on November 16, 2023 sought to address a hostile work environment based on sexual harassment. In further response to paragraph 44 of the Complaint, Defendants aver that the first meeting on November 16, 2023 occurred after Antonella Rotilio had texted Danielle Fleming that morning to ask if she could drop off the documentation that Bill White and Danielle Fleming had been requesting from the Union and, shortly after the transmittal of this text, Ms. Rotilio appeared at the conference room with Plaintiff Tara Sweet and another union member, Kait Englerth, who both complained about alleged mistreatment by Kara Long and Katie Wishman. Defendants further deny any remaining allegations of paragraph 44 of the Complaint.**

45.     On November 16, 2023, UPSEU representative Antonella Rotilio, Plaintiff Sweet, and Sweet's co-worker met with representatives from the OTB. At the meeting Plaintiff Sweet and her co-worker described the harassment they had been subjected to by the OTB supervisors.

**RESPONSE:  Responding to paragraph 45 of the Complaint, Defendants aver, upon information and belief, that the meeting referred to in paragraph 45 of the Complaint constitutes the second meeting that occurred on November 16, 2023 which occurred after the first meeting at which there was no mention by Plaintiff Tara Sweet or anyone else attending the first meeting of sexual harassment.  In further response to paragraph 45 of the Complaint, the second meeting—which occurred later on November 16, 2023 and was**

not attended by Plaintiff Tara Sweet—was attended only by Union representative Antonella Rotilio who appeared alone and discussed sexual harassment, but only referred to a complaint by an "anonymous" employee and Defendants had no knowledge as to the identity of the purported complainant to whom Ms. Rotilio referred.  Defendants deny any remaining allegations of paragraph 45 of the Complaint.

46.     Following the November 16, 2023 meeting, OTB representatives asked UPSEU representative Rotilio and Plaintiff Sweet to stay. The OTB then falsely accused Plaintiff Sweet of theft amounting to $8.00. Plaintiff Sweet denied the allegation.

**RESPONSE:  Responding to paragraph 46 of the Complaint, Defendants admit that—at the first meeting which occurred on November 16, 2024 which was attended by Plaintiff Sweet, her Union Representative Ms. Rotilio and Kait Englerth—WROTB asked Plaintiff Sweet to stay following the discussion (which had concerned complaints by Plaintiff Tara and Kait Englerth about purported mistreatment they allegedly had received from Kara Long and Katie Wishman) so that a second violation (following Ms. Sweet's suspension for overserving a patron) could proceed without Plaintiff Sweet's co-worker Kait Englerth present—namely, it had been reported (and confirmed by the videotapes routinely recorded in the workplace by WROTB), that Plaintiff Sweet had violated WROTB's prohibition against stealing money from patrons when finalizing their credit card receipts. In further response to paragraph 46, Defendants aver that the accusation of theft by Plaintiff Sweet was not false, but Plaintiff Sweet nonetheless denied the charge despite having been videotaped and having been witnessed in this act by a WROTB security officer. Defendants deny any remaining allegations of paragraph 46 of the Complaint.**

47.     About twenty minutes later, Plaintiff Sweet was called to the OTB corporate

office and fired by OTB CEO Henry Wojtaszek. Mr. Wojtaszek refused to provide any reason for Plaintiff Sweet's termination instead stating Sweet would receive a letter.

**RESPONSE:  Responding to paragraph 47 of the Complaint, Defendants admit that WROTB's Chief Executive Officer, Henry Wojtaszek terminated Plaintiff Sweet's employment 20 minutes after the first meeting described in paragraphs 44 and 46 at which Sweet and her union representative were informed of the additional violation of  Plaintiff's rules and policies consisting of theft from a customer and Defendants further admit that Mr. Wojtaszek did not inform Plaintiff Sweet of the reason for the termination of her employment at this second meeting because Plaintiff Sweet obviously was fully informed twenty minutes earlier of her theft from a patron and also knew of her prior suspension as discipline for overserving another patron. Defendants further admit that, in accordance with WROTB's policies, Plaintiff Sweet was told that she would be informed of her termination by letter and Defendants deny any remaining allegations of paragraph 47 of the Complaint.**

48.     Plaintiff Sweet received a letter dated November 16, 2023 from the OTB confirming her termination but providing no basis for her termination.

**RESPONSE:  Responding to paragraph 48 of the Complaint, Defendants admit that a letter was transmitted to Plaintiff Sweet on November 16, 2023, on the same day as the two meetings described in Defendants' Response to paragraphs 44, 45 and 47 above, which confirmed the termination of Plaintiff Sweet's employment, but which did not provide the basis for her termination inasmuch as an explanation was unnecessary given that Plaintiff Sweet and her union representative were informed on the same date as the date of the termination of Plaintiff's violation of  Plaintiff's rules and policies by stealing from a**

23

**customer and given that Plaintiff Sweet obviously knew of her prior suspension as discipline for overserving another patron. Defendants deny any remaining allegations of paragraph 48 of the Complaint.**

49.     In later communications between the OTB and UPSEU, the OTB claimed Sweet was terminated for stealing. Upon information and belief, another bartender took $4.00 of the allegedly stolen $8.00 and was not disciplined.

**RESPONSE:  Responding to paragraph 49 of the Complaint, Defendants admit that a letter was transmitted to Plaintiff Sweet on November 16, 2023—on the same day as the two meetings described in Defendants' Responses to paragraphs 46 and 47 above—which confirmed the termination of Plaintiff Sweet's employment, but which did not provide the basis for her termination inasmuch as an explanation was unnecessary given that Plaintiff Sweet and her union representative were informed on that very same date—November 16, 2023—about Plaintiff's violation of  Plaintiff's rules and policies by stealing from a customer and therefore, obviously knew that the reasons for the termination of Plaintiff Sweet's employment obviously were for her theft from a patron of WROTB's facility in Batavia, New York, which Plaintiff Sweet also knew followed her prior suspension and discipline for overserving another patron. Defendants deny any remaining allegations of paragraph 48 of the Complaint, including without limitation that WROTB failed to terminate the employment of any other similarly situated employee.**

### FIRST CLAIM FOR RELIEF
### (Unlawful tipping practices, 29 U.S.C. § 203(m)(2)(B), §216)

50.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if they were made here.

**RESPONSE: Defendants repeat and reallege their responses to paragraphs 1 to 49 of the Complaint as if they were set forth herein.**

51.     Under the Fair Labor Standards Act, an employer may not keep tips received by its employees for any purposes, including allowing supervisors to keep any portion of employees' tips, regardless of whether the employer takes a tip credit.

**RESPONSE: The allegations contained in paragraph 51 of the Complaint are conclusions of law as opposed to well-pled facts and, accordingly, no responsive pleading is required.**

52.     By such conduct, Defendants have willfully violated 29 U.S.C. § 203(m)(2)(B) and the supporting sections of the Fair Labor Standards Act.

**RESPONSE:  Defendants deny the allegations of paragraph 52 of the Complaint and deny that Defendants have violated or willfully violated  29 U.S.C. § 203(m)(2)(B) and the supporting sections of the FLSA and further aver that NO compensation is due to Plaintiffs under the FLSA or to any of the bartenders for the tips shared in by persons referred to in this Complaint as "supervisors" because—regardless of the terms of the Collective Bargaining Agreement—such persons do not constitute "supervisors" under the FLSA in that—as shown by documentary evidence consisting of a true and correct copy of the description of these persons' job duties, attached hereto as EXHIBIT B, and true and correct copies of documentary evidence consisting of recordings of the amount of time expended by these persons on bartending duties as opposed to supervisory duties by these persons, attached hereto as EXHIBIT C—the persons whom the Complaint refers to as "supervisors" are NOT supervisors within the meaning of the FLSA and were entitled under the FLSA to retain their share of the tip money as part of their wages. In further response to paragraph 52, Defendants deny any remaining allegations of that paragraph.**

25

53.     Due to the Defendants' willful violations of Federal Labor Law, Plaintiffs are entitled to recover from Defendants their portions of the unpaid tips and liquidated damages for the past three years.

**RESPONSE:  Defendants deny the allegations of paragraph 53 of the Complaint and deny that Defendants have violated or willfully violated  29 U.S.C. § 203(m)(2)(B) and the supporting sections of the FLSA and deny that Plaintiffs are entitled to recover from Defendants any portions of any allegedly unpaid tips or any other relief for the past three years or otherwise. In further response to paragraph 53 of the Complaint, Defendants aver that NO compensation or liquidated damages are due to Plaintiffs under the FLSA or to any of the bartenders for the tips shared in by persons referred to in this Complaint as "supervisors" because—regardless of the terms of the Collective Bargaining Agreement— such persons do not constitute "supervisors" under the FLSA in that—as shown by documentary evidence consisting of a true and correct copy of the description of these persons' job duties, attached hereto as __EXHIBIT B__, and true and correct copies of documentary evidence consisting of recordings of the amount of time expended by these persons on bartending duties as opposed to supervisory duties by these persons, attached hereto as __EXHIBIT C__—the persons whom the Complaint refers to as "supervisors" are NOT supervisors within the meaning of the FLSA and were entitled under the FLSA to retain their share of the tip money as part of their wages. In further response to paragraph 53, Defendants deny any remaining allegations of that paragraph.**

54.     Pursuant to 29 U.S.C. § 216(e)(2), Defendants are additionally liable for civil penalties, which shall not "exceed $1,100 for each such violation."

**RESPONSE:  Defendants deny the allegations of paragraph 54 of the Complaint and deny**

that Defendants are additionally liable for civil penalties under 29 U.S.C. § 216(e)(2) or any other provision of law. In further response to paragraph 54 of the Complaint, Defendants aver that NO compensation or liquidated damages or civil penalties are due to Plaintiffs under the FLSA or to any of the bartenders for the tips shared in by persons referred to in this Complaint as "supervisors" because—regardless of the terms of the Collective Bargaining Agreement—such persons do not constitute "supervisors" under the FLSA in that—as shown by documentary evidence consisting of a true and correct copy of the description of these persons' job duties, attached hereto as **EXHIBIT B**, and true and correct copies of documentary evidence consisting of recordings of the amount of time expended by these persons on bartending duties as opposed to supervisory duties by these persons, attached hereto as **EXHIBIT C**—the persons whom the Complaint refers to as "supervisors" are NOT supervisors within the meaning of the FLSA and were entitled under the FLSA to retain their share of the tip money as part of their wages. In further response to paragraph 54, Defendants deny any remaining allegations of that paragraph.

### SECOND CLAIM FOR RELIEF
(Sexual Harassment, NY Executive Law § 296)

55.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if they were made here.

**RESPONSE: Defendants repeat and reallege their responses to paragraphs 1 to 54 of the Complaint as if they were set forth herein.**

56.    Under the New York State Human Rights Law, it is an unlawful discriminatory practice for an employer to sexually harass an employee. NY Executive Law § 296(1)(a), (e).

**RESPONSE: The allegations contained in paragraph 56 of the Complaint are conclusions**

of law as opposed to well-pled facts and, accordingly, no responsive pleading is required.

57.     As alleged above both the Director of Security and Chief Operating Officer sexually harassed Plaintiff Sweet on numerous occasions.

**RESPONSE: Responding to paragraph 57 of the Complaint, Defendants deny that WROTB's Director of Security and Chief Operating Officer sexually harassed Plaintiff Sweet at any time much less on numerous occasions and further aver that WROTB engaged an independent investigator who issued an independent report attached hereto as EXHIBIT D, which concluded that Ms. Sweet's allegations of sexual harassment are without merit and further deny any remaining allegations of paragraph 57 of the Complaint.**

58.     Defendants were notified in the past that its Director of Security was sexually harassing employees, and the Defendants took no action.

**RESPONSE: Responding to paragraph 58 of the Complaint, Defendants deny that WROTB's Director of Security sexually harassed employees or was ever notified of such and further aver that WROTB engaged an independent investigator who issued an independent report attached hereto as EXHIBIT D, which concluded that Ms. Sweet's allegations of sexual harassment are without merit and further deny any remaining allegations of paragraph 58 of the Complaint.**

59.     Because the Defendants have failed and refused to take action, the Defendants are complicit in allowing a hostile and offensive work environment to develop for its female employees.

**RESPONSE: Defendants deny the allegations of paragraph 59 of the Complaint and further aver that WROTB engaged an independent investigator who issued an**

independent report attached hereto as **EXHIBIT D, which concluded that Ms. Sweet's allegations of sexual harassment are without merit.**

60.      Pursuant to NY Executive Law § 297, Plaintiff Sweet is entitled to recover from Defendants compensatory damages, including economic and non-economic damages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest, as provided by the law.

**RESPONSE: Defendants deny the allegations of paragraph 60 of the Complaint and further aver that WROTB engaged an independent investigator who issued an independent report attached hereto as EXHIBIT D, which concluded that Ms. Sweet's allegations of sexual harassment are without merit.**

61.      Pursuant to NY Executive Law § 297(4)(e), Defendants are liable for civil fines and penalties, which "shall be in addition to and not reduce or offset any other damages or payment imposed."

**RESPONSE: Defendants deny the allegations of paragraph 61 of the Complaint and further aver that WROTB engaged an independent investigator who issued an independent report attached hereto as EXHIBIT D, which concluded that Ms. Sweet's allegations of sexual harassment are without merit.**

### THIRD CLAIM FOR RELIEF
#### (Retaliation, NY Executive Law §296(7), 29 U.S.C. § 215(a)(3))

62.      Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if they were made here.

**RESPONSE: Defendants repeat and reallege their responses to paragraphs 1 to  61 of the Complaint as if they were set forth herein.**

63.     Pursuant to NY Executive Law §296(7), it is unlawful for an employer to retaliate or discriminate against any person because he or she has opposed or reported sexual harassment.

**RESPONSE: The allegations contained in paragraph 63 of the Complaint are conclusions of law as opposed to well-pled facts and, accordingly, no responsive pleading is required.**

64.     Pursuant to 29 U.S.C. § 215(a)(3), an employer may not discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding related to the Fair Labor Standards Act.

**RESPONSE: The allegations contained in paragraph 64 of the Complaint are conclusions of law as opposed to well-pled facts and, accordingly, no responsive pleading is required.**

65.     Defendants changed Plaintiff Sweet's schedule and gave her less desirable shifts and assignments. Defendants' changes cost Plaintiff Sweet to lose wages and tips.

**RESPONSE: Defendants deny the allegations contained in paragraph 65 of the Complaint.**

66.     Defendants suspended Plaintiff Sweet without just cause. Defendants did not discipline another bartender for the same conduct nor have bartenders ever been disciplined for the alleged conduct in the past. Defendants' discipline cost Plaintiff Sweet three days wages and tips.

**RESPONSE: Defendants deny the allegations contained in paragraph 66 of the Complaint.**

67.     Defendants knowingly allowed supervisors to harass and sexually harass Plaintiff Sweet and create a hostile work environment.

**RESPONSE: Defendants deny the allegations contained in paragraph 67 of the**

Complaint.

68.     Defendants terminated Plaintiff Sweet without just cause based on a false

accusation. Defendants did not discipline another bartender for the same conduct.

**RESPONSE: Defendants deny the allegations contained in paragraph 68 of the**

**Complaint.**

69.     Pursuant to NY Executive Law § 297, Plaintiff Sweet is entitled to recover from

Defendants compensatory damages, including economic and non-economic damages,

reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest, as provided by

the law.

**RESPONSE: Defendants deny the allegations contained in paragraph 69 of the**

**Complaint.**

70.     Pursuant to 29 U.S.C. § 216(b), Plaintiff Sweet is entitled to recover from

Defendants' back pay, front pay and liquidated damages as provided by law.

**RESPONSE: Defendants deny the allegations contained in paragraph 70 of the**

**Complaint.**

71.     Pursuant to 29 U.S.C. § 216(b), Plaintiff Sweet is entitled to reinstatement.

**RESPONSE: Defendants deny the allegations contained in paragraph 71 of the**

**Complaint.**

72.     Pursuant to NY Executive Law § 297(4)(e), Defendants are liable for civil fines

and penalties, which "shall be in addition to and not reduce or offset any other damages or

payment imposed."

**RESPONSE: Defendants deny the allegations contained in paragraph 72 of the**

**Complaint.**

73.     Pursuant to 29 U.S.C. §216, Defendants are liable for a fine "of not more than $10,000."

**RESPONSE: Defendants deny the allegations contained in paragraph 73 of the Complaint.**

74.     On or about December 8, 2023, a duly verified notice of claim regarding this matter was served upon Defendants but Defendants have not made any adjustment or settlement of this matter, and more than thirty (30) days have elapsed since service of that notice.

**RESPONSE: Responding to paragraph 74 of the Complaint, notwithstanding any allegedly verified notice regarding this matter served upon Defendants, Plaintiff Tara Sweet is not entitled to any adjustment or settlement of this matter or any other matter and Plaintiff Sweet was not retaliated against in any respect, but instead was suspended and then terminated from her employment with WROTB for just cause after having been disciplined for overserving and then once again violating Defendants' rules and policies by engaging in theft from a patron of WROTB's facility in Batavia, New York and Defendants further deny any remaining allegations of paragraph 74 of the Complaint.**

**DEFENDANTS DENY EACH AND EVERY ALLEGATION OF THE AMENDED COMPLAINT TO THE EXTENT NOT HERETOFORE ADMITTED, DENIED OR OTHERWISE CONTROVERTED.**

## DEFENSES, AFFIRMATIVE DEFENSES AND FURTHER ANSWERS

As and for their Defenses and Affirmative Defenses, Defendants state as follows:

### First Defense

The Complaint fails to state a claim for which relief can be granted, including without limitation that the Plaintiffs' First Cause of Action is subject to dismissal under Federal Rule 12 (c) based upon the documentary evidence attached to this Answer as **EXHIBITS A, B** and **C.**

### Second Defense

Some or all of the Plaintiff's claims are barred by the applicable statute of limitations.

### Third Defense

The Plaintiffs' claims under the FLSA are barred by the doctrine of accord and satisfaction in that Plaintiffs have been paid and accepted all wages and tips owed to Plaintiffs.

### Fourth Defense

The Plaintiffs' claims are barred by the doctrines of laches, estoppel, ratification, acquiescence in that, for example, Plaintiffs Corrine Armison and Brooklyn Cline voluntarily terminated their own employment for personal reasons and failed to make any of the claims alleged in this Complaint prior to their voluntary departure and Plaintiff Tara Sweet engaged in wrongful misconduct including over-serving Defendants' patrons and engaging in theft and violation of the policies and rules of Defendants of which she was aware, which justified both the suspension discipline imposed on her and the termination of her employment.

### Fifth Defense

The Plaintiffs' Third Cause of Action is barred in that there was no retaliation by Defendants as to any of the Plaintiffs and any and all discipline or other actions taken with respect to each of the Plaintiffs was imposed by Defendants for valid business reasons in all cases.

## Sixth Defense

The Plaintiff Tara Sweet's Second Cause of Action for sexual harassment and the Third

Causes of Action (to the extent that this retaliation claim is based upon sexual harassment) are

barred in that there was no sexual harassment of Plaintiff Sweet by the Individual Defendants and

her claims are barred, in any event, by her knowledge of Defendant WROTB's complaint

procedure and her failure to participate in the investigations conducted by Defendant WROTB of

her complaints as to sexual harassment.

## DEMAND FOR TRIAL BY JURY

Defendants demand a trial by jury on all issues that are so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** having fully answered the Plaintiffs' Complaint, Defendants

respectfully request that the Court dismiss the Complaint filed herein with prejudice, and that

Defendants be awarded their attorneys' fees and costs incurred in defense of this action; and that

Defendants be granted such other and further relief as the Court deems proper.

Dated:  Buffalo, New York
         May 30, 2023

                              Respectfully submitted,

                              **SCHRODER, JOSEPH & ASSOCIATES, LLP**

                              s/ Linda H. Joseph
                              Linda H. Joseph
                              394 Franklin Street, 2nd Floor
                              Buffalo, NY 14202
                              Telephone:  (716) 881-4902
                              Facsimile:  (716) 881-4909
                              ljoseph@sjalegal.com

                              *Attorneys for Defendants Batavia Downs Casino
                              and   Western Regional Off Track Betting Corp.*

34

**VERIFICATION**

STATE OF NEW YORK        )
                                   ) ss.:
COUNTY OF GENESEE       )

Danielle Fleming, being duly sworn, deposes and says:

        I am the Director of Human Resources for Western Regional Off Track Betting Corp., one of the Defendants in this matter; am acquainted with the facts and circumstances of this matter; have read the foregoing Answer; and know its contents to be true, except as to those matters alleged upon information and belief. As to those matters alleged upon information and belief, I believe them to be true. I further aver that all documents attached as Exhibits to this Complaint are true and correct copies of documents taken from the books and records of Western Regional Off Track Betting Corp.

                                                    _____
                                                    Danielle Fleming

        Sworn to before me this
29th day of May, 2024.

_____
        Notary Public

> KAITLYN AC WARREN
> NOTARY PUBLIC, STATE OF NEW YORK
> Registration No. 01WA6387670
> Qualified in Genesee County
> Commission Expires 02/25/2023 27