UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TARA SWEET, CORINNE ARMISON, and
BROOKLYNN CLINE,

                  Plaintiffs,

   -against-

BATAVIA DOWNS CASINO, WESTERN
REGIONAL OFF TRACK BETTING CORP.,
HENRY WOJTASZEK, SCOTT KIEDROWSKI,
and DANIEL WOOD
                  Defendants.
_____

**VERIFIED AMENDED COMPLAINT**

Index No.: 6:24-cv-6118

     Plaintiffs TARA SWEET, CORINNE ARMISON, and BROOKLYNN CLINE, by their attorneys Hayes Dolce, as and for a Verified Complaint against defendants, BATAVIA DOWNS CASINO, WESTERN REGIONAL OFF TRACK BETTING CORP., HENRY WOJTASZEK, SCOTT KIEDROWSKI, and DANIEL WOOD, respectfully allege as follows:

**INTRODUCTORY STATEMENT**

     1.     This is an action to enforce New York State and Federal labor laws. Plaintiffs Tara Sweet, Corinne Armison, and Brooklynn Cline (collectively "Plaintiffs") worked at Batavia Downs Casino, Western Regional Off Track Betting Corporation (hereinafter "WROTB" or "Employer") as bartenders. During their tenures at WROTB and until November 2023, the Employer maintained a practice of pooling tips and giving a cut of the pooled tips to supervisors. After Plaintiff Sweet brought this unlawful practice to the Employer's attention, the Employer retaliated against Sweet by cutting her hours, giving her less preferential shifts, verbally harassing

her, disciplining her without just cause, and ultimately terminating Sweet's employment. Following her suspension, Sweet disclosed that she had been subjected to sexual harassment by the Chief Operating Officer Scott Kiedrowski and the Director of Security Daniel Wood. The Employer has taken no action to correct any of these issues and must be held responsible for such heinous conduct.

## JURISDICTION AND VENUE

2. This Court has proper jurisdiction because the conduct giving rise to the cause of action alleged in this Complaint occurred in Genesee County and was properly removed to the Western District of New York.

3. This Court is the proper venue under 28 U.S. Code § 1391, because Plaintiffs reside or worked in Genesee County and Defendant WROTB is located in Genesee County.

## PARTIES

4. Plaintiff TARA SWEET is an adult resident of Elba, New York, located in Genesee County. Sweet was employed by the Employer from on or around September 9, 2019 until on or around November 9, 2023, when she was terminated.

5. Plaintiff CORINNE ARMISON is an adult resident of Batavia, New York, located in Genesee County. Armison was employed by the Employer from on or around August 30, 2019 until on or around April 21, 2023, when she resigned.

6. Plaintiff BROOKLYNN CLINE is an adult resident of Belmont, New York, located in Allegany County. Cline was employed by the Employer from in or around October 2021 until on or around May 6, 2023, when she resigned.

7. Defendant BATAVIA DOWNS CASINO, WESTERN REGIONAL OFF TRACK

BETTING CORP. is a public benefit corporation organized under the laws of the State of New York with its principal place of business in Genesee County, located at 8315 Park Road, Batavia, NY 14020.

8. Defendant HENRY WOJTASZEK works in Genesee County. Wojtaszek is the Chief Executive Officer for the Employer. Upon information and belief, Wojtaszek sets standards of service to customers at the Employer and determines and maintains policies governing terms and conditions of employees' employment.

9. Defendant SCOTT KIEDROWSKI works in Genesee County. Kiedrowski is the Chief Operating Officer for the Employer. Upon information and belief, Kiedrowski sets standards of service to customers at the Employer and determines and maintains policies governing terms and conditions of employees' employment.

10. Defendant DANIEL WOOD works in Genesee County. Wood is the Director of Security for the Employer. Upon information and belief, Wood is responsible for supervising all WROTB security staff and determines and maintains policies governing terms and conditions of their employment. Wood also oversees all WROTB employees to ensure employees follow security policy and procedure.

**STATEMENT OF FACTS**

11. At all relevant times, Plaintiffs were employees within the meaning of NY Executive Law §§292 et seq., Federal Labor Law Title 29, Chapter 8, §§203 et seq., and supporting New York State and United States Department of Labor regulations.

12. At all relevant times, Defendants have been an employer within the meaning of NY Executive Law §§292 et seq., Federal Labor Law Title 29, Chapter 8, §§203 et seq., and supporting

New York State and United States Department of Labor regulations.

13. At all relevant times, Defendants Henry Wojtaszek, Scott Kiedrowski, and Daniel Wood have been company agents or officers within the meaning of NY Executive Law §§292 et seq. and supporting New York State Department of Labor regulations.

14. At all relevant times, Defendants Henry Wojtaszek and Scott Kiedrowski have set standards of service to bar patrons at the Employer and have determined and maintained policies governing terms and conditions of bar employees' employment, including the Employer's tip pooling procedure.

15. WROTB's bartenders are responsible for performing typical bartender duties at one of three bars as well as working events held at the Employer's facility.

## Wage Theft of Pooled Tips

16. From before 2017 until on or about November 1, 2023, WROTB maintained a policy where all tips earned during a shift or event were pooled and split evenly amongst all staff who worked during the shift including supervisors.

17. On November 1, 2023, following a labor management meeting between WROTB and UPSEU, the union that represents the bartenders who work for the Employer, the Employer agreed to stop the practice of giving a percentage of the tips to on duty supervisors.

18. No resolution was reached with UPSEU or the Plaintiffs over the tips owed to WROTB bartenders. Upon information and belief, WROTB did not compensate any of the bartenders for the tips unlawfully given to supervisors during the long tenure of its tip policy.

19. There are two positions which unlawfully participated in the tip pool for OTB bar service during the relevant period: (1) Bar Supervisor; and (2) Assistant Bar Supervisor.

20. The WROTB Bar Supervisor exercises substantial managerial authority over bar staff, including regularly hiring bar staff, having the power to fire bar staff, disciplining bar staff, commending bar staff, evaluating bar staff, training bar staff, setting the work schedules of bar staff and determining which bar staff worked at different bars in the facility, setting bar policies and procedures, determining when bar staff must take breaks, supervising bar staff during shifts, maintaining employment paperwork of bar staff, administering the collective bargaining agreement with the union representing bar staff, amongst other managerial duties. The WROTB Bar Supervisor has never been included in the UPSEU bargaining unit and both the Employer and the Union have always acknowledged the Bar Supervisor is a non-unit managerial position.

21. The WROTB Assistant Bar Supervisor exercises substantial managerial authority over bar staff along with the Bar Supervisor, including regularly hiring bar staff, having the power to fire bar staff, disciplining bar staff, commending bar staff, evaluating bar staff, training bar staff, setting the work schedules of bar staff and determining which bar staff worked at different bars in the facility, setting bar policies and procedures, determining when bar staff must take breaks, supervising bar staff during shifts, maintaining employment paperwork of bar staff, administering the collective bargaining agreement with the union representing bar staff, amongst other managerial duties. The WROTB Assistant Bar Supervisor has never been included in the UPSEU bargaining unit and both the Employer and the Union have always acknowledged the Assistant Bar Supervisor is a non-unit managerial position.

22. Defendants Wojtaszek and Kiedrowski willfully allowed management to participate in the WROTB tip pool by ignoring the terms of the Employer's collective bargaining agreement with the Union and federal law.

23. Defendants Wojtaszek and Kiedrowski also exercise substantial managerial authority over bar staff, including the power to hire and fire, implement and enforce policies, maintain employment records, and bargain collectively over the terms and conditions of their employment.

**Sexual Harassment**

24. Since in or about October 2019 Director of Security Dan Wood has subjected Plaintiff Sweet to sexual harassment.

25. Mr. Wood continually made inappropriate gestures and advances towards Plaintiff Sweet. He frequently told Plaintiff Sweet that she is beautiful, she is a handworker, that they should run away together, that they should get married, and that her fiancé did not deserve her.

26. Mr. Wood repeatedly approached Plaintiff Sweet and hugged her or rubbed her back without her consent.

27. Mr. Wood regularly visited Plaintiff Sweet during her shift. Mr. Wood's behavior towards Plaintiff Sweet caused customers to ask if he was her boyfriend.

28. Throughout 2023, Mr. Wood via text invited Plaintiff Sweet to his office so he could give her a back massage. Mr. Wood also texted Plaintiff Sweet that she could take a 15 minute break in his office and nap on his couch.

29. Upon information and belief, Mr. Wood did not make sexual advances toward male employees at WROTB, nor inappropriately touch them.

30. After Plaintiff Sweet was suspended in August 2023, Mr. Wood's sexual harassment ceased.

31. In or about July 2021, the Union notified the Employer by Sean Schiano that then

Assistant Director of Security Mr. Wood had sexually assaulted a security guard when measuring her for her uniform. By email, on or about July 9, 2021, Mr. Schiano confirmed that he had taken the employee's statement and that the matter would be addressed with VP of Administration William White.

32. Upon information and belief, the Employer never concluded its investigation into Mr. Wood's sexual assault of a security guard.

33. Instead, on or about January 1, 2022, the Employer promoted Mr. Wood to Director of Security.

34. Since in or about January 2020, COO Scott Kiedrowski has subjected Plaintiff Sweet to sexual harassment.

35. In or about January 2020, Mr. Kiedrowski invited Plaintiff Sweet and two other female co-workers to a Sabres game in a private suite.

36. After that employee outing, Mr. Kiedrowski began regularly approaching Plaintiff Sweet and complimented her about her looks. He also started to refer to Plaintiff Sweet as "special T".

37. Mr. Kiedrowski would regularly text Plaintiff Sweet late at night to hit on her, after she had gone home for the night. Mr. Kiedrowski's texts made Plaintiff Sweet feel uncomfortable. Due to the late hour the texts were sent, Plaintiff Sweet usually would not see the texts until the next morning.

38. On or about December 6, 2021, Mr. Kiedrowski invited Plaintiff Sweet and two other female co-workers to watch a Bills game in a private suite. While this made Plaintiff Sweet feel uncomfortable, she went because she knew she would not be alone with Mr. Kiedrowski and

did not want to upset him.

39.     In or about February 2022, Mr. Kiedrowski asked Plaintiff Sweet to bring lunch to his office and said that he would give her a big tip. Plaintiff Sweet was scared and creeped out by this request. Plaintiff Sweet did not want to be alone with him. Plaintiff Sweet told her co-worker. The co-worker said she was glad that Mr. Kiedrowski did not ask her to bring him lunch as she would feel uncomfortable. Plaintiff Sweet felt uncomfortable with the request but brought Mr. Kiedrowski lunch to his office because she was too scared to tell him no.

40.     On June 1, 2022, Mr. Kiedrowski texted Plaintiff Sweet asking if these "fuckers talk to Plaintiff Sweet like this every day", referring to pervert customers. Even though Mr. Kiedrowski witnessed and acknowledged the sexual harassment from customers, he took no steps to address the harassment, and then used it as an opportunity to hit on Sweet. This conversation and Mr. Kiedrowski's advances made Plaintiff Sweet uncomfortable.

41.     In or about August 2022, Plaintiff Sweet spoke to Mr. Kiedrowski's boss, CEO Henry Wojtaszek about customer menu suggestions. Soon after that Plaintiff Sweet received a message from her supervisor stating Mr. Kiedrowski had said that if she had any more complaints, Mr. Kiedrowski would switch her to a different department. After that, Mr. Kiedrowski's inappropriate behavior towards Plaintiff Sweet stopped for a while.

42.     Then in or about December 2022, Mr. Kiedrowski sent Plaintiff Sweet a text saying, "hey special T would you please buy my friends a drink?" Plaintiff Sweet complied with his request because she was afraid of Mr. Kiedrowski retaliating against her due to his threat earlier that year.

43.     Upon information and belief, Mr. Kiedrowski did not make sexual advances toward

male employees at WROTB.

44.     Since December 2022, Mr. Kiedrowski has left Plaintiff Sweet alone.

## Unlawful Retaliation

45.     In or about August 2023, Plaintiff Sweet and a co-worker raised concerns about WROTB's tipping practice with management.

46.     In or about August 2023, WROTB retaliated against Plaintiff Sweet and her co-worker by changing their schedules and giving them less preferential work.

47.     In or about August 2023, Plaintiff Sweet contacted UPSEU and asked UPSEU to intervene on their behalf.

48.     On or about August 30, 2023, when WROTB learned of UPSEU's involvement, WROTB retaliated against Plaintiff Sweet and her co-worker by suspending each of them for three days without just cause.

49.     Another bartender was involved in the incident that served as WROTB's justification for suspending Plaintiff Sweet and her co-worker. Upon information and belief, the other bartender was not disciplined.

50.     On October 31, 2023, UPSEU met with WROTB to again discuss the unfair tipping practices and the retaliation against Plaintiff Sweet and her co-worker.

51.     On or about November 1, 2023, WROTB agreed to stop the practice of giving supervisors a cut of the pooled tips.

52.     In November 2023, supervisors began to harass Plaintiff Sweet and her co-worker creating a hostile work environment.

53.     UPSEU demanded a meeting with WROTB to address the hostile work

environment.

54. On November 16, 2023, UPSEU representative Antonella Rotilio, Plaintiff Sweet, and Sweet's co-worker met with representatives from WROTB. At the meeting Plaintiff Sweet and her co-worker described the harassment they had been subjected to by the WROTB supervisors.

55. Following the November 16, 2023 meeting, WROTB representatives asked UPSEU representative Rotilio and Plaintiff Sweet to stay. WROTB then falsely accused Plaintiff Sweet of theft amounting to $8.00. Plaintiff Sweet denied the allegation.

56. About twenty minutes later, Plaintiff Sweet was called to the WROTB corporate office and fired by WROTB CEO Henry Wojtaszek. Mr. Wojtaszek refused to provide any reason for Plaintiff Sweet's termination instead stating Sweet would receive a letter.

57. Plaintiff Sweet received a letter dated November 16, 2023 from WROTB confirming her termination but providing no basis for her termination.

58. In later communications between WROTB and UPSEU, WROTB claimed Sweet was terminated for stealing. Upon information and belief, another bartender took $4.00 of the allegedly stolen $8.00 and was not disciplined.

**FIRST CLAIM FOR RELIEF**
**(Unlawful tipping practices, 29 U.S.C. § 203(m)(2)(B), §216)**

59. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if they were made here.

60. Under the Fair Labor Standards Act, an employer may not keep tips received by its employees for any purposes, including allowing supervisors to keep any portion of employees' tips, regardless of whether the employer takes a tip credit.

61. By such conduct, Defendants WROTB, Wojtaszek, and Kiedrowski have willfully violated 29 U.S.C. § 203(m)(2)(B) and the supporting sections of the Fair Labor Standards Act.

62. Due to the Defendants' willful violations of Federal Labor Law, Plaintiffs are entitled to recover from Defendants their portions of the unpaid tips and liquidated damages for the past three years.

63. Pursuant to 29 U.S.C. § 216(e)(2), Defendants are additionally liable for civil penalties, which shall not "exceed $1,100 for each such violation[.]"

## SECOND CLAIM FOR RELIEF
(Sexual Harassment, NY Executive Law § 296)

64. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if they were made here.

65. Under the New York State Human Rights Law, it is an unlawful discriminatory practice for an employer to sexually harass an employee. NY Executive Law § 296(1)(a), (e).

66. As alleged above both Director of Security Wood and Chief Operating Officer Kiedrowski sexually harassed Plaintiff Sweet on numerous occasions.

67. Defendants WROTB and Wojtaszek were notified in the past that Defendant Wood and Defendant Kiedrowski were sexually harassing employees, and Defendants WROTB and Wojtaszek took no action.

68. Because Defendants WROTB and Wojtaszek have failed and refused to act, the Defendants are complicit in allowing a hostile and offensive work environment to develop for female employees.

69. Pursuant to NY Executive Law § 297, Plaintiff Sweet is entitled to recover from Defendants compensatory damages, including economic and non-economic damages, punitive

damages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest, as provided by the law.

70. Pursuant to NY Executive Law § 297(4)(e), Defendants are liable for civil fines and penalties, which "shall be in addition to and not reduce or offset any other damages or payment imposed[.]"

## THIRD CLAIM FOR RELIEF
**(Retaliation, NY Executive Law §296(7), 29 U.S.C. § 215(a)(3))**

71. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if they were made here.

72. Pursuant to NY Executive Law §296(7), it is unlawful for an employer to retaliate or discriminate against any person because he or she has opposed or reported sexual harassment.

73. Pursuant to 29 U.S.C. § 215(a)(3), an employer may not discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding related to the Fair Labor Standards Act.

74. Defendants WROTB, Wojtaszek, and Kiedrowski changed Plaintiff Sweet's schedule and gave her less desirable shifts and assignments. Defendants' changes cost Plaintiff Sweet to lose wages and tips.

75. Defendants WROTB, Wojtaszek, and Kiedrowski suspended Plaintiff Sweet without just cause. Defendants did not discipline another bartender for the same conduct nor have bartenders ever been disciplined for the alleged conduct in the past. Defendants' discipline cost Plaintiff Sweet three days wages and tips.

76. Defendants WROTB, Wojtaszek, and Kiedrowski knowingly allowed supervisors to harass and sexually harass Plaintiff Sweet and create a hostile work environment.

77. Defendants WROTB, Wojtaszek, and Kiedrowski terminated Plaintiff Sweet without just cause based on a false accusation. Defendants did not discipline another bartender for the same conduct.

78. Pursuant to NY Executive Law § 297, Plaintiff Sweet is entitled to recover from Defendants compensatory damages, including economic and non-economic damages, punitive damages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest, as provided by the law.

79. Pursuant to 29 U.S.C. § 216(b), Plaintiff Sweet is entitled to recover from Defendants back pay, front pay and liquidated damages as provided by law.

80. Pursuant to 29 U.S.C. § 216(b), Plaintiff Sweet is entitled to reinstatement.

81. Pursuant to NY Executive Law § 297(4)(e), Defendants are liable for civil fines and penalties, which "shall be in addition to and not reduce or offset any other damages or payment imposed[.]"

82. Pursuant to 29 U.S.C. §216, Defendants are liable for a fine "of not more than $10,000[.]"

83. On or about December 8, 2023, a duly verified notice of claim regarding this matter was served upon Defendants but Defendants have not made any adjustment or settlement of this matter, and more than thirty (30) days have elapsed since service of that notice.

**WHEREFORE**, Plaintiffs request the following relief:

  a. Unpaid tips and wages owed to Plaintiffs, pursuant to New York Labor Law, Fair Labor Standards Act and supporting regulations;

  b. Liquidated damages as provided by the law;

      c.     Punitive damages, as provided by the law;

      d.     Compensatory damages, including economic damages and non-economic damages, for violations of the New York State Human Rights Law;

      e.     Civil fines and penalties, as provided by the law;

      f.     Pre-judgment and post-judgment interests, as provided by the law;

      g.     Reasonable attorneys' fees and costs;

      h.     Appropriate equitable and injunctive relief to remedy Defendants' violations of the Fair Labor Standards Act and New York State Human Rights Law, including but not limited to an order enjoining Defendants from continuing their unlawful practices and an order requiring Defendants to offer Plaintiff Sweet reinstatement; and

      i.     Such other injunctive and equitable relief as the Court deems necessary, just, and proper.

Dated:  June 20, 2024
          Buffalo, New York

                                Respectfully Submitted,

                                */s/ Claire T. Sellers*
                                Claire T. Sellers
                                HAYES DOLCE
                                135 Delaware Ave., Suite 502
                                Buffalo, NY 14202
                                716-609-9988
                                csellers@hayesdolce.com

# VERIFICATION

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF GENESEE      )

TARA SWEET, duly sworn says:

I am one of the Plaintiffs in this matter, am acquainted with the fact and circumstances of this matter, have read the foregoing Amended Complaint, and know its contents to be true, except as to those matters alleged upon information and belief. As to those matters alleged upon information and belief, I believe them to be true.

_____
TARA SWEET

Sworn to before me this
20 day of June 2024

_____
Notary Public - New York State

Claire T. Sellers
Notary Public, State of New York
No. 02SE6328196
Qualified in Erie County
Commission Expires October 4, 2027

# VERIFICATION

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF GENESEE        )

CORINNE ARMISON, duly sworn says:

I am one of the Plaintiffs in this matter, am acquainted with the fact and circumstances of this matter, have read the foregoing Amended Complaint, and know its contents to be true, except as to those matters alleged upon information and belief. As to those matters alleged upon information and belief, I believe them to be true.

_____
CORINNE ARMISON

Sworn to before me this
20 day of June 2024

_____
Notary Public - New York State

Claire T. Sellers
Notary Public, State of New York
No. 02SE6328196
Qualified in Erie County
Commission Expires October 4, 2027

# VERIFICATION

STATE OF NEW YORK   )
                    ) ss.:
COUNTY OF ALLEGANY  )

BROOKLYNN CLINE, duly sworn says:

I am one of the Plaintiffs in this matter, am acquainted with the fact and circumstances of this matter, have read the foregoing Amended Complaint, and know its contents to be true, except as to those matters alleged upon information and belief. As to those matters alleged upon information and belief, I believe them to be true.

_____
BROOKLYNN CLINE

Sworn to before me this
20 day of June 2024

_____
Notary Public - New York State

JEANETTE STEWART
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01ST4908215
Qualified in Allegany County
Commission Expires 10/19/2025